UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILY E. BAJOREK-DELATER,

       Plaintiff,

                           Case No. 17-CV-10570

vs.

                           HON. GEORGE CARAM STEEH

UNITED STATES OF AMERICA,

       Defendant/Third-Party Plaintiff,

vs.

HENRY FORD ALLEGIANCE HEALTH,
DOROTHY BROWN, D.O., KRISTINA
STURGILL, D.O., WASEEM ULLAH, M.D.,
and HARISH RAWAL, M.D.

       Third-Party Defendants.

_____/

ORDER DENYING THIRD-PARTY DEFENDANTS
HENRY FORD ALLEGIANCE HEALTH, BROWN, STURGILL
AND RAWAL'S MOTION FOR SUMMARY JUDGMENT [ECF No. 63]

This is a medical malpractice case brought under the Federal Tort

Claims Act ("FTCA").   Plaintiff Emily Bajorek-Delater sued the United

States of America under the FTCA for the alleged medical malpractice of

certain federal employees working at federally funded clinics.   The United

States was granted leave to file a third-party complaint seeking indemnity,

common-law contribution, and statutory contribution against Henry Ford

Allegiance Health, Dr. Dorothy Brown, Dr. Kristina Sturgill, Dr. Harish

Rawal and Dr. Waseem Ullah (collectively referred to as "third-party

defendants" or "TPDs").   Those claims are premised upon the assertion

that the TPDs committed medical malpractice under Michigan state law and

were, at least in part, a cause of the injuries alleged in plaintiff's original

underlying complaint.

The matter is presently before the court on motion for summary

judgment filed by Henry Ford Allegiance Health, Dr. Dorothy Brown, Dr.

Kristina Sturgill and Dr. Harish Rawal (collectively referred to as "the

moving third-party defendants" or "the moving TPDs").   For the reasons

stated below, the moving TPD's motion for summary judgment is denied.

## FACTUAL BACKGROUND

Plaintiff suffered a permanent spinal cord injury after several doctors

at several medical facilities allegedly failed to diagnose and treat a

condition known as cauda equina syndrome over the course of several

weeks [Complaint, ECF No. 1].   The cauda equina means "the horses tail"

of the spinal cord;   "where all of the nerve roots at the bottom of the spinal

cord . . . separate and go down into the bottom of the lumbosacral

vertebrae area." (Tucker Dep. at 47:23–48:3).   Cauda equina syndrome

results from "[t]he impingement of those nerve roots." (*Id*.at 48:4–5);
(Roychoudhury Dep. at 168:17–169:6).

The symptoms of cauda equina syndrome are: "[1] Loss of bowel and
bladder control and [2] numbness in the groin and saddle area of the
perineum, associated with [3] weakness of the lower extremities."
(UpToDate, Eval. of Low Back Pain, at 15).   Weakness in the lower
extremities may include "foot drop," or the inability to lift one's foot.
(Tucker Dep. at 64:20–65:22); (Roychoudhury Dep. at 168:17–169:6).
"Cauda equina syndrome represents a true surgical emergency where
decompression should be performed within 24 hours, and within 12 hours if
possible." (UpToDate, Acute Lumbosacral Radiculopathy, at 1).

The United States represents a primary care physician, Dr. Promita
Roychoudhury, who saw plaintiff thirty days before plaintiff had surgery for
her condition.   The federal clinic's doctor never saw plaintiff again after
that visit.   Third-party defendant Waseem Ullah, M.D. (not a party to the
pending motion), interpreted plaintiff's MRI seventeen days before plaintiff's
surgery.   Third-party defendants Dorothy Brown, D.O., and Kristina
Sturgill, D.O., saw plaintiff seven days before her surgery.   Third-party
defendant Harish Rawal, M.D., examined plaintiff two days before surgery.

During discovery, plaintiff and her experts alleged that all of these physicians should have referred her for emergency surgery at the time they saw her but did not do so.   The Court granted the United States' motion for leave to file a third-party complaint alleging "claims under common law principles of contribution and indemnity and M.C.L. § 600.292[5]a" against Dr. Brown, as well as Henry Ford Allegiance Health, Kristina Sturgill, D.O., Waseem Ullah, M.D., and Harish Rawal, M.D. based on their alleged medical malpractice (ECF No. 27; ECF No. 29).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).   The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.   The procedure is not a disfavored procedural shortcut.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.   *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."   *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v.*

*988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.   *Anderson*, 477 U.S. at 248, 252.   Rather, there must be evidence on which a jury could reasonably find for the non-movant.   *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

"Absent waiver, the doctrine of sovereign immunity insulates the government from suit."   *Dep't. of the Army v. Blue Fox*, 525 U.S. 255, 260 (1998) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)). With the enactment of the FTCA, Congress waived the government's sovereign immunity for certain claims, subject to specific limitations.   When an action is brought under the FTCA, the plaintiff must establish a viable claim under the law of the state in which the alleged negligent act or omission took place.   *Premo v. United States*, 599 F 3d 540, 545 (6th Cir. 2010).

The alleged negligence in this case occurred in the state of Michigan, therefore Michigan's substantive law of contribution and indemnity, as well as the substantive requirements of Michigan's law regarding medical malpractice, apply to this case.

- 6 -

I.    Common Law Indemnification

Common law "indemnification is an equitable doctrine that shifts the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another whose active negligence is the primary cause of the harm."   *St. Luke's Hosp. v. Giertz*, 458 Mich. 448, 453 (1998).   The party seeking indemnification must be free from active negligence.   "Whether a party was free from active negligence in an underlying case and thus entitled to common-law indemnification is generally a question of fact for the jury."   *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 292 Mich. App. 51, 60–61 (2011).

The moving TPDs contend that plaintiff's underlying complaint alleges active negligence on the part of the United States, so the United States cannot assert a claim for common law indemnity against them.   "To hold that a party to a lawsuit should be legally bound by the mere allegations of its opponent, regardless of the facts and circumstances surrounding a case, would constitute nothing less than judicial indifference to notions of fairness and fundamental principles of justice."   *Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F. Supp. 1294, 1302 (E.D. Mich. 1994).   "Thus, in determining whether the party seeking indemnity was actively negligent, a court must review all of the evidence presented, including but not limited to

the underlying complaint."   *Id*.   This determination may not be made by simply looking to the allegations of plaintiff's complaint.

The original underlying complaint in this case pleads alternative theories of negligence, against an employee of a federally funded clinic, as well as against a non-employee of the federally funded clinic, Dr. Brown. When the underlying complaint pleads alternative theories of negligence, a court cannot determine whether a claim for common law indemnity against a third party is valid until the parties obtain a judgment on the issue of active versus passive negligence.   *See St. Luke's Hosp.*, 458 Mich. at 450, 454.

There remains an issue of fact whether the United States (Dr. Roychoudhury) was actively negligent in causing the harm alleged by plaintiff.   Therefore, the moving TPD's motion for summary judgment on this claim is denied.

II.   <u>Common Law Contribution</u>

In 1970, "the Michigan Supreme Court expressly created a common law right to contribution among nonintentional tortfeasors, abolishing the former common law bar against such suits."   *Dolinka VanNoord & Co. v. Oppenheimer & Co.*, 891 F. Supp. 1244, 1248 (W.D. Mich. 1995) (citing *Moyses v. Spartan Asphalt Paving Co.*, 383 Mich. 314, 334-35 (Mich.

1970)[1]; *Fed. Sav. & Loan Ins. Corp. v. Quinlan*, 678 F. Supp. 174, 175

(E.D. Mich. 1988) ("In Michigan, the right to contribution is both common

law based (citing *Moyses*) and statutorily authorized (citing M.C.L.A. §

600.2925a).").   The cause of action for common law contribution has never

been overruled by statute or by the Michigan Supreme Court.   *See id*.

The moving TPDs argue that there is no longer a common law right to

contribution in Michigan and therefore the claim asserted under this theory

should be dismissed.   In support of their position, the moving TPDs cite to

Michigan state appellate law holding that the right to contribution is

controlled entirely by statute.   *Isabella County v. State*, 181 Mich. App. 99,

103 (1989); *Reurink Bros. Star Silo, Inc. v. Clinton County Rd. Comm'rs*,

161 Mich. App. 67, 70 (1987).   However, it is well-settled in Michigan that

a state appellate court may not overrule a decision by the Michigan

Supreme Court.   *Associated Builders & Contractors v. City of Lansing*, 880

N.W.2d 765, 772 (Mich. 2016).

In addition, the United States District Court for both the Eastern and

Western Districts of Michigan have rejected the assertion made by the

---

[1]  The Michigan Supreme Court later overruled a portion of the holding in *Moyses*, noting that it only overruled the portion of the *Moyses* opinion dealing with personal jurisdiction, not the portion regarding claims for common law contribution. *See Hapner v. Rolf Brauchli, Inc.*, 273 N.W.2d 822, 829 n.5 (1978).

moving TPDs.    *See Dolinka*, 891 F. Supp. at 1249 ("neither of th[e] decisions [from] the Court of Appeals provide[d] any discussion of the origins or history of the common law right to contribution in Michigan, nor did [they] refute [their own] other recent decisions which appear to endorse a common law right to contribution."); *Fed. Sav. & Loan Ins. Corp.*, 678 F. Supp. at 175.

The two cases relied on by the moving TPDs do not support their argument.   One case involved statutory contribution, but not a claim of common law contribution.   The case did not even discuss common law contribution.   *Fishbach-Natkin, Inc. v. Shimizu America Corp.*, 854 F.Supp. 1294, 1299 (E.D. Mich. 1994).   Nor did the other case discuss common law contribution.   *In re Air Crash at Detroit Metro. Airport*, 791 F. Supp. 1204, 1225-26 (E.D. Mich. 1992).

The Court concludes that Michigan does recognize a common law right of contribution among nonintentional tortfeasors.   The moving TPDs motion for summary judgment is denied as to this claim.

III.   Statutory Contribution

In the event the United States is found liable in plaintiff's underlying suit, it alleges an entitlement to statutory contribution from the moving TPDs under M.C.L. § 600.2925a due to their alleged medical malpractice.

To state a claim for contribution, the United States must first demonstrate a prima facie case of medical malpractice against the moving TPDs.   The moving TPDs argue that there is no genuine issue of material fact that they committed medical malpractice because the United States does not have the expert testimony required to support a such a claim against them.

A.    Medical Malpractice in Michigan

The elements of a cause of action for medical malpractice have been codified by statute in Michigan.   Those elements include:

> [I]n an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice . . . [t]he defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

M.C.L. §600.2912a(1)(b).   Expert testimony is required to establish the elements of medical malpractice.   *Thomas v. McPherson Community Health Center*, 155 Mich. App. 700, 705 (1986) ("expert testimony is required to establish the applicable standard of conduct, the breach of that standard, and causation.").   This is because, in medical malpractice cases, issues of negligence and causation are normally beyond the knowledge of laymen.   *Baldwin v. Williams*, 104 Mich. App. 735, 738 (1981).

- 11 -

B.    <u>Expert Evidence</u>

The United States submitted expert reports from Dr. Kirk Agerson

and Dr. Mark Adams in support of its claims that the moving TPDs

committed medical malpractice.   In their motion for summary judgment, the

moving TPDs argue that the limited scope of testimony offered by these

two experts cannot support a finding of medical malpractice.

Under Rule 26, the parties must disclose certain information about

their experts during discovery, such as fee schedules, curriculum vitae,

publication history, and testimony history.   Fed. R. Civ. P. 26(a)(2)(B).   An

expert's report must also contain a description of the facts the expert relied

upon and "a complete statement of all opinions the witness will express" at

trial.   *Id*.

According to the United States, at trial Dr. Agerson will testify that Dr.

Brown and Dr. Sturgill did not comply with the standard of care because

plaintiff had clear signs of cauda equina syndrome when they examined

her, but their ultimate advice to plaintiff was to keep a neurosurgery

appointment several days later.   This information is contained in Dr.

Agerson's report [ECF No. 66-15].   Dr. Adams will testify that Dr. Rawal

violated the standard of care because plaintiff had clear signs of cauda

equina syndrome when Dr. Rawal examined her, but he scheduled surgery

for two days later, during which time, plaintiff's condition worsened to the point that plaintiff had to return to the emergency room the following morning. Dr. Adams will also testify that, if plaintiff had surgery shortly after Dr. Brown, Dr. Sturgill, or Dr. Rawal examined her, plaintiff would not have suffered her current injuries. Dr. Adams' report contains all of this information [ECF No. 66-19].

Expert witnesses are not restricted to the exact wording of their reports at trial. "[R]ule [26(a)(2)] contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report" at trial. *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006).

Under Rule 702, a district court should allow expert testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 176 (6th Cir. 2009); Fed. R. Evid. 702. Although the moving TPDs request that the Court hold a *Daubert* hearing to determine the admissibility of Dr. Agerson's and Dr Adams' testimony, they do not raise any objection to their qualifications or

their methodology.   Therefore, the Court has no basis at this time to convene a *Daubert* hearing.

In addition to offering the testimony of Drs. Agerson and Adams, the United States asserts that it intends to offer several expert witnesses, treating physicians, the medical records, and admissible medical literature to demonstrate that Dr. Brown, Dr. Sturgill, and Dr. Rawal breached the standard of care.   The moving TPDs have not sustained their burden of demonstrating there is no issue of material fact for trial regarding the United States' allegations that they committed medical malpractice.

<u>CONCLUSION</u>

Now therefore, for the reasons stated above,

IT IS HEREBY ORDERED that the moving third-party defendants' motion for summary judgment is DENIED.

Dated:   November 9, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 9, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk